# Noble, Appellant, *v.* Western Pennsylvania Natural Gas Co.

*Oil and gas lease—Royalties—Measurement by meter—Failure to provide for pressure measurement—Custom — Pressure gauge —Discovery—Accounting—Bill in equity.*

Where an oil and gas lease provides for the payment of rental by royalties to be based on the gas marketed, the amount to be measured by meter, but is silent as to the pressure at which the measurements are to be made, a bill in equity for a discovery as to the readings of lessee's pressure gauge affixed to the pipe near · the meter, and for an accounting, will be dismissed where plaintiff's contention that there was a custom that measurements be made at a certain pressure was not supported by evidence, where it appeared that the almost universal practice was to stipulate in the lease the pressure at which the gas was to be measured and that such stipulations varied; and where it was admitted that during the negotiations for the making of the lease nothing was said on the subject of pressure by the parties.

Argued Oct. 13, 1916. Appeal, No. 117, Oct. T., 1916, by John H. Noble, from decree of C. P. Allegheny Co., July T., 1915, No. 129, in Equity, dismissing bill in equity for discovery and accounting in case of John H. Noble and Margaret Cora Noble v. Western Pennsylvania Natural Gas Company. Before BROWN, C. J., MESTREZAT, POTTER, STEWART and WALLING, JJ. Affirmed.

Bill in equity for discovery and accounting.

SHAFER, P. J., filed the following findings of fact and conclusions of law:

### FINDINGS OF FACT.

First. The plaintiffs in February, 1914, made to the defendant an oil and gas lease, whereby they let to the defendant a farm containing 98 acres, in Hempfield

Township, Westmoreland County, for one year or as long as oil and gas should be found in paying quantities; and in consideration of the premises the defendant lessee agreed to deliver to the plaintiff, John H. Noble, one of the lessors, one-sixth of the oil, if oil were found and if gas were found in sufficient quantities for marketing "said gas shall be measured by meter at the well"; and further, that if more than one well were drilled all the gas should be connected into one system of pipes and a meter or measuring station installed on the premises, and the lessors should receive as royalty for the gas sold off the premises two and one-half cents per thousand cubic feet. The lessee agrees to commence operations within three months from the date of the lease and complete a well within six months, and to drill other wells under certain conditions as to production of the first, which are not material to this case.

Second. The defendant thereupon entered upon the land and drilled a well which produced gas, and afterwards drilled two others and connected the three together by pipes at one point where a meter was installed.

Third. The defendant furnished to the plaintiffs each month, beginning with June 14th, up to February, 1915, statements of the number of cubic feet of gas which passed according to the readings of the meter, and paid the plaintiffs therefor at the rate of 2½c per thousand on these readings; the amounts of gas and the payments thereon being set out in the eighth paragraph of the bill.

Fourth. The defendant has, at the meter, a recording pressure gauge which would indicate the pressure of the gas passing through the pipes at various intervals, and had such a gauge during the seven months above mentioned. The plaintiffs have demanded of the defendant the readings of this pressure gauge, which were refused them.

Fifth. It is an obvious physical fact that the number of atoms of gas contained in the space of a cubic foot depends upon the pressure exerted upon the gas, and

that the volume of gas enclosed in a vessel is increased or diminished in proportion to the increase or decrease of pressure upon it. It is therefore evident that more particles or atoms of gas will pass through a meter at a high pressure than at a low pressure, but that the reading of the meter will be the same in each case. The claim of the plaintiff is that under the contract he is entitled to have the pressure of the gas at various times made known to him, so that by means of certain mathematical tables and calculations it may be ascertained how many cubic feet of gas passed through the meter at a definite pressure; and he further contends that it is the usual and recognized custom in the gas business in Western Pennsylvania that gas should be measured on a pressure of eight ounces over and above the atmospheric pressure, and that the custom is reasonable and universal in the district and prevailed at the time the lease was made. The contention of the defendant is that there is no such custom and that the true meaning of the contract is, that the provision for measuring the gas by meter at the well without any statement of the pressure at which it was to be measured means that it is to be measured at line pressure, that is, the varying pressure of the gas in the line from time to time.

Sixth. As to the custom set up by the plaintiff to measure the gas at eight ounces pressure or to reduce it to such measurement by calculation, no evidence was produced from which the existence of any such custom could be found. It was shown that it was the common practice if not the universal practice, in drawing leases or contracts of this kind, to state the pressure at which the gas was to be measured, and that this was sometimes eight ounces and more frequently ten ounces and sometimes one pound or more, according to the agreement of the parties; and there was no evidence from which it could be inferred that any particular pressure other than line pressure was meant when no express provision as to the pressure was contained in the contract.

Seventh. It was admitted by all the parties to the contract that during negotiations for its making nothing whatever was said on the subject of pressure.

### CONCLUSIONS OF LAW.

We are clearly of opinion that when the parties contracted that the gas should be measured by meter at the well, without anything being said about the pressure and without any obligation on the part of the lessee to keep any measurement of record of the pressure, they must be deemed to have meant that a meter should be put upon the line and the gas passed through it from the well, and that it should be paid for according to the readings of the meter. Having found that there was no custom to the contrary, it will follow that the plaintiffs have no right to a disclosure of the readings of the pressure gauge of defendant, and no right to recover from defendant anything beyond the rental already paid or accounted for, as set out in the bill. The bill must, therefore, be dismissed with costs to be paid by the plaintiff. Let a decree be drawn accordingly.

The lower court dismissed the bill. Plaintiff appealed.

*Errors assigned* were in dismissing complainant's exceptions to findings of fact and conclusions of law, and in dismissing the bill.

*H. V. Blaxter,* of *Lazear & Blaxter,* with him *T. C. Lazear* and *J. T. Lazear,* for appellant, cited: Bubb v. Parker & Edwards Oil Co., 252 Pa. 26; Flaccus v. West Penn Gas Co., 213 Pa. 561.

*Samuel McClay,* with him *W. A. Seifert* and *Reed, Smith, Shaw & Beal,* for appellee.—An oil and gas lease is to be construed most strongly against a lessor, and the pressure at which the gas is to be measured can-

not be inserted therein unless the testimony is clear, precise, and indubitable that the parties had agreed upon the pressure and it had been omitted from the contract either by fraud or mistake: Collison v. Philadelphia Company, 233 Pa. 350; Ambler v. Phillips, 132 Pa. 167; Collins v. Mechling, 1 Pa. Superior Ct. 594; Snyder v. Phillips, 25 Pa. Superior Ct. 648.

PER CURIAM, January 8, 1917:

The decree in this case is affirmed, at the costs of appellants, on the facts found and the legal conclusions reached by the learned president judge of the court below.

---

# Klenzing v. Greenfield Lumber Co., Appellant.

*Negligence—Master and servant—Scaffold—Defective fastening —Fall—Fellow servant rule—Case for jury—Act June 10, 1907, P. L. 523.*

1. In an action by an employee against a contractor to recover damages for personal injuries resulting from a fall occasioned by the alleged failure of the defendant to properly fasten scaffold uprights used in the construction of a porch, the case is for the jury and a verdict and judgment for the plaintiff will be sustained where it appears that the scaffold had been placed in position by defendant's foreman, that plaintiff, who took no part in its erection or use was directed to tear the scaffold down, and while engaged in so doing, in order to avoid crossing over a stairway between joists, swung outside and around one of the uprights when it pulled out and threw him to the ground, causing the injuries complained of.

2. In such case where the foreman acted in a dual capacity, not only in doing the work himself but in exercising supervision over the manner and method of doing the work, the defendant was properly held liable for his negligence.

3. In such case plaintiff's right to recover was not wholly dependent upon the provisions of the Act of June 10, 1907, P. L. 523, providing that the fellow servant rule shall not be a defense in certain cases, where there was evidence that the foreman used a